FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 02, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRENDAN K. MOORE,<br><br>  Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>  Defendant. | No. 2:15-CV-0301-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 15, 16. Attorney Joseph M. Linehan represents Brendan K. Moore (Plaintiff); Special Assistant United States Attorney Cynthia B. De Nardi represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 9. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on June 4, 2012, alleging disability since June 18, 1982, due to unspecified mental

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

health issues, Post-Traumatic Stress Disorder (PTSD), depression, bipolar disorder, borderline personality disorder, H. pylori, and congenital tracheal stenosis. Tr. 154-162, 174. The applications were denied initially and upon reconsideration. Administrative Law Judge (ALJ) Marie Palachuk held a hearing on April 10, 2014, Tr. 37-77, and issued an unfavorable decision on May 2, 2014, Tr. 19-32. The Appeals Council denied Plaintiff's request for review on September 30, 2015. Tr. 1-6. The ALJ's April 2014 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 28, 2015. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on June 18, 1982, and was 29 years old on the SSI application date, June 4, 2012.[1] Tr. 154. Plaintiff was incarcerated from September 29, 2002, to December 24, 2008. Tr. 63, 424. He later violated the terms of his supervision and served an additional term of imprisonment from October 2009 until May 8, 2012. Tr. 63-64. Plaintiff obtained his GED prior to his first term of incarceration. Tr. 65.

Plaintiff testified at the administrative hearing he last worked in 2009 and had not tried to find work since 2012. Tr. 68. He reported he stopped working on May 15, 2009, because of his conditions. Tr. 174. Plaintiff testified his disability was primarily based on his mental health issues, Tr. 69, and stated the main issue preventing him from work is depression, Tr. 65. He indicated some days, at least

---

[1] At the administrative hearing, Plaintiff amended his onset date to the date of the filing of the application. Tr. 48-49.

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

four times a month, he just does not feel like doing anything. Tr. 65, 68. He stated he could not pay attention for longer than 10 minutes at a time and had difficulty with memory. Tr. 70. He additionally testified he has daily problems with his emotions and would experience flashbacks and mood swings once or twice a week. Tr. 66, 68. He indicated he also has difficulty with sleep. Tr. 67. Despite taking sleeping medications, he reported getting only four or five hours of disturbed sleep per night. Tr. 67.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, with deference to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On May 2, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 4, 2012, the application date. Tr. 21. At step two, the ALJ determined Plaintiff had the following severe impairments: adjustment disorder; PTSD; personality disorder; polysubstance abuse in remission; right shoulder tendonitis; and morbid obesity. Tr. 21. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 22.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined Plaintiff could perform a full range of work at all exertional levels, but would have the following non-exertional limitations: he could only occasionally

reach overhead with the right upper extremity; he would be limited to simple, routine, and repetitive tasks; he would be able to maintain attention and concentration on those tasks for only up to two-hour intervals between regularly scheduled breaks; he would be limited to no more than a moderate production rate of pace (no assembly line work); he should have no interaction with the public or unsupervised contact with children; he could only have infrequent and superficial (non-cooperative) interaction in small groups of co-workers and supervisors; and his work should involve dealing with things rather than people. Tr. 26.

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 31. However, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of Laundry Worker II, Kitchen Helper, Office Cleaner I, and Material Distributor. Tr. 31-32. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from June 4, 2012, the date the application for SSI was filed, through the date of the ALJ's decision, May 2, 2014.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred in this case by (1) failing to give appropriate weight to the opinions of Melody Stupey, M.D., Thomas Genthe, Ph.D., and Annalisa Ochiltre, MS, LMHCA; and (2) failing to provide specific, clear and convincing reasons for finding Plaintiff not entirely credible.

## DISCUSSION

**A.    Plaintiff's Credibility**

Plaintiff contends the ALJ erred by failing to provide valid reasons for finding Plaintiff not fully credible in this case. ECF No. 15 at 15-16.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. Tr. 27.

The ALJ first determined Plaintiff's "misinformation at the hearing concerning his work activity" detracted from the credibility of his overall allegations. Tr. 21, 29. An inconsistency in a disability claimant's testimony supports a decision by the ALJ that a claimant lacks credibility with respect to his claim of disabling pain. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (finding that when a claimant fails to be a reliable historian, "this lack of candor carries over" to other portions of his testimony).

As noted by the ALJ, Plaintiff testified at the hearing that he had not worked since 2009 and had not tried to find work since 2012, Tr. 68, but he reported to some of his care providers, including the counselor who testified on his behalf at

the hearing, that he had worked "under the table" in construction and the collection of scrap metal, Tr. 456-457, 468. Tr. 21, 29. In addition, a June 29, 2012, medical report indicated Plaintiff had a job offer he was considering. Tr. 28, 426. It was proper for the ALJ to find Plaintiff's inconsistent statement regarding his work history weakened Plaintiff's overall credibility.

The ALJ also found the objective medical evidence of record did not fully support Plaintiff's allegations regarding his impairments. Tr. 27-30. A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (holding that, in determining credibility, an ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

With regard to Plaintiff's alleged mental impairments and symptoms, the ALJ indicated Plaintiff attended school and played softball while in prison, and his care providers often noted his pleasant effect. Tr. 27, 282-283. In November 2011, Plaintiff reported to Michael Reznicek, M.D., that he would like to work in the prison kitchen. Tr. 27, 273. Dr. Reznicek observed no signs of acute distress. *Id*. Plaintiff was released from prison in May 2012, and he had a job offer by June 2012. Tr. 28, 426. In October 2012, Plaintiff reported his mood was "pretty good" and that he had been working in construction for a couple of days. Tr. 28, 408. At that time, Plaintiff indicated to Brian Haberbush, ARNP, that he had not experienced any significant psychological disturbances. Tr. 28, 585-586. In November 2012, Plaintiff reported satisfactory results from his medication and stated he was getting out more and feeling better. Tr. 28, 405. Plaintiff underwent counseling with Annalisa Ochiltre, MS, throughout 2013. Tr. 28. Ms. Ochiltre

noted in April, October and December 2013, that Plaintiff had made "moderate" progress in reducing his mental health symptoms, he was engaging in more positive activities outside the home, and his symptoms were reduced overall. Tr. 28-29, 439-440, 443. Plaintiff was able to visit relatives in Oregon in June 2013, continued to work with his roommates, and had approximately 10 visitors in his home for Thanksgiving 2013. Tr. 29, 461, 468, 480. By December 2013, Plaintiff had found "under the table" work and had purchased a vehicle for transportation to and from this job. Tr. 29, 456-457. In February 2014, Plaintiff rated his depression as a three and reported he would start school in the summer. Tr. 29, 450.

With regard to Plaintiff's alleged physical impairments and symptoms, October/November 2012 imaging revealed nothing of significance. Tr. 30, 598, 600. In December 2013, Plaintiff presented to Christopher Lang, M.D., with neck pain and numbness radiating down his right hand, but Dr. Lang noted Plaintiff's recent EMG test was negative. Tr. 30, 619. Plaintiff underwent right shoulder subacromial decompression and posterior capsular release surgery in January 2014, but the evidence prior to and after the surgery did not suggest a reduction in his exertional levels. Tr. 30. Following the surgery, Plaintiff reported he was "doing great" and could reach above his head and behind his back. Tr. 30, 519.

As determined by the ALJ, the evidence of record does not support the disabling symptoms and limitations alleged by Plaintiff. It was proper for the ALJ to conclude Plaintiff was not entirely credible because Plaintiff's alleged level of limitation was inconsistent with the credible medical evidence of record.

The ALJ also noted Plaintiff received a job offer in June 2012, but reported he was undecided regarding whether he should take the job as he would be compelled to pay child support and purchase his own medications without state assistance. Tr. 28, 436. The Ninth Circuit has recognized that the ALJ may properly consider the issue of motivation in assessing credibility. *Matney v.*

*Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Moreover, merely seeking employment after the alleged onset of disability date may be a factor in an ALJ's credibility determination. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009). It was reasonable for the ALJ to conclude that Plaintiff's ability to attract a job offer and his explanation for declining the offer weakened Plaintiff's overall credibility.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints, which are fully supported by the record. Accordingly, the ALJ did not err by finding Plaintiff's allegations were not entirely credible in this case.

**B.    Medical Source Opinions**

Plaintiff contends that the ALJ erred by failing to accord proper weight to the opinions of certain medical sources of record. Plaintiff specifically argues the ALJ erred by discounting the opinions of Melody Stupey, M.D., Thomas Genthe, Ph.D., and Annalisa Ochiltre, MS, LMHCA. ECF No. 15 at 10-15.

**1.    Melody Stupey, M.D.**

Plaintiff asserts the ALJ erred by rejecting the opinions provided by Dr. Stupey in an April 10, 2014, Mental Medical Source Statement. ECF No. 15 at 10-12. Plaintiff argues the opinions expressed therein demonstrate that, contrary to the ALJ's conclusion in this case, Plaintiff had mental impairments which caused significant limitations. ECF No. 15 at 11.

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only by providing clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043. Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Here, Dr. Stupey's opinion was contradicted by other medical sources, including the medical expert, Donna Mary Veraldi, Ph.D., and state agency reviewing physicians;[2] therefore, the ALJ needed to provide only specific and legitimate reasons for rejecting Dr. Stupey's report.

---

[2]Donna Mary Veraldi, Ph.D., testified as an impartial medical expert at the July 1, 2015, administrative hearing. Tr. 42-55. Dr. Veraldi indicated the record reflected Plaintiff lived independently and did not have difficulty taking care of himself; did not have social limitations, other than perhaps conflicts with people across time, given that he lived with roommates, invited people to his home for barbecues, has had several girlfriends, and was able to attend groups; and would be capable of performing simple, routine, repetitive work. Tr. 44-46. Consistent with Dr. Veraldi, state agency psychological consultants, Bruce Eather, Ph.D., and John

On April 10, 2014, Dr. Stupey checked boxes on a Mental Medical Source Statement form indicating Plaintiff had marked limitations (frequent interference on the ability to function in a work setting) in 15 of the 20 areas of mental functioning assessed and severe limitations (constant interference on the ability to function in a work setting) in three other areas of mental functioning. Tr. 602-604. The Court notes at the outset that while the form report mentions Plaintiff's diagnoses, it does not provide a detailed explanation for the check-box findings therein. Tr. 604; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

The ALJ first indicates Dr. Stupey's opinion on the form report was inconsistent with her own objective findings. Tr. 24. As indicated by the ALJ, on November 13, 2012, Dr. Stupey noted Plaintiff had good eye contact, a cooperative attitude, was well-groomed with appropriate psychomotor activity, had good judgment and insight, and had a normal thought process and content. Tr. 24, 28, 402-404. The ALJ also indicated that Plaintiff reported to Dr. Stupey on October 11, 2013, that his depression was a 4/10, an improvement attributed to his cognitive therapy. Tr. 24, 374. Dr. Stupey's reports do not support the significant findings assessed on the April 10, 2014, form report.

The ALJ also found Dr. Stupey's significantly limited ratings were contradicted by Plaintiff's own reports. Tr. 24. Plaintiff reported to Ms. Ochiltre on April 9, 2013, that he was doing "pretty well" and had gotten his driver's license; on June 26, 2013, that he was able to visit relatives in Oregon; on October 9, 2013, that he continued to work with his housemates on collecting scrap metal; on November 27, 2013, that he and his finance had made a lot of food for

---

Robinson, Ph.D., opined Plaintiff would be able to perform simple, routine tasks but would have more difficulty with detailed tasks. Tr. 30, 85, 96.

Thanksgiving and entertained about ten people; on December 26, 2013, that he had found some "under the table" mechanical work; on January 8, 2014, that he had returned to work and it had been "great"; and on February 26, 2014, that he was excited about starting school in the summer and his depression was at a three. Tr. 24, 28, 29, 450, 456, 457, 461, 468, 480, 492. Plaintiff informed Dr. Genthe in March 2014 that he fixed bicycles, cleaned up his yard and house, and attended appointments. Tr. 23, 506. He told Dr. Genthe that he could care for his hygiene needs, wash dishes, do laundry, vacuum, dust, and do other household chores daily. *Id*. The level of functioning reported by Plaintiff throughout the record is inconsistent with the significant limitations assessed by Dr. Stupey on the April 10, 2014, Mental Medical Source Statement form.

The ALJ additionally determined that the medical evidence as a whole simply did not support the significant limitations noted by Dr. Stupey. Tr. 25, 29. The ALJ indicated when Plaintiff began medication management with Dr. Stupey in April 2013, he reported significantly worse symptoms than he had previously reported to prior medical providers. Tr. 28. Previous providers reported that Plaintiff was "cooperative" and "pleasant" during evaluations, Tr. 23, 267, 273, 402, with Michael Reznicek, M.D., specifically noting in January 2011, that Plaintiff sat very calmly and "showed absolutely no signs of anxiety, dysphoria, or lability" Tr. 23, 27, 286. On October 31, 2012, Brian F. Haberbush, ARNP, indicated Plaintiff stated his current medical condition was good and he had not had any significant psychological disturbances. Tr. 28, 586. Plaintiff continued to report satisfactory results from his medication in November 2012, and indicated he was "getting out more and feeling better." Tr. 28, 405. Progress reports from Ms. Ochiltre, as noted above, reflect that Plaintiff continued to function fairly well throughout 2013. Tr. 28- 29, 450-492. In March 2014, Dr. Genthe remarked that Plaintiff was well-groomed with good hygiene, and "presented as generally open, cooperative and friendly." Tr. 24, 508. Dr. Genthe found no indications of a

formal thought disorder and reported that Plaintiff could follow three-step instructions. Tr. 24, 29, 509. As concluded by the ALJ, the credible medical evidence of record does not support the significant limitations assessed by Dr. Stupey on the April 10, 2014, Mental Medical Source Statement form.

Based on the foregoing, the Court finds that the ALJ provided specific and legitimate reasons that are supported by substantial evidence for according little weight to the April 10, 2014, Mental Medical Source Statement of Dr. Stupey. Accordingly, the ALJ did not err with respect to her findings regarding this report.

### 2. Thomas Genthe, Ph.D.

Plaintiff asserts the ALJ also erred by accordingly "little weight" to the examining opinions provided by Dr. Genthe in March 2014. ECF No. 15 at 12-14.

Dr. Genthe completed a psychological/psychiatric evaluation of Plaintiff on March 21, 2014. Tr. 505-517. Dr. Genthe diagnosed bipolar I disorder (ultra rapid cycling); social anxiety disorder; PTSD, chronic; methamphetamine use disorder, in sustained remission; and borderline personality disorder. Tr. 513. Dr. Genthe completed a medical source statement and checked boxes indicating Plaintiff was severely limited in his ability to communicate, perform effectively and maintain appropriate behavior in a work setting. Tr. 514.

The ALJ found Dr. Genthe's diagnosis of a bipolar disorder was not supported by the medical evidence of record. Tr. 21-22, 24, 30-31. As noted by the ALJ, while Plaintiff reported experiencing multiple manic episodes each year, no medical provider ever witnessed or identified any manic episodes, Tr. 21-22, and both Dr. Veraldi and Dr. Stupey opined that Plaintiff's symptoms did not meet the criteria for a bipolar disorder, Tr. 21-22, 30-31. The diagnosis of a bipolar disorder is unsupported.

///
///
///

The ALJ also indicated Dr. Genthe's assessed limitations were largely based on Plaintiff's non-credible subjective allegations.[3] Tr. 24, 29. Dr. Genthe's diagnosis of bipolar disorder appears to have been based entirely on Plaintiff's report that he experienced 12 to 15 manic episodes per year, each lasting seven to nine days. Tr. 24, 505. As discussed above, the evidence of record does not support a bipolar disorder diagnosis. Dr. Genthe explicitly stated "no personality assessment was formally conducted," Tr. 508, yet, despite this lack of any formal personality assessment, Dr. Genthe noted Plaintiff presented with a history of problematic personality traits, Tr. 29. The foregoing demonstrates Dr. Genthe relied on Plaintiff's non-credible self-report of symptoms in assessing Plaintiff's limitations.

The ALJ further determined Dr. Genthe's report was not consistent with the record as a whole. Tr. 24. As discussed above, Dr. Reznicek noted in January 2011 that Plaintiff sat very calmly and "showed absolutely no signs of anxiety, dysphoria, or lability," Tr. 23, 27, 286; Mr. Haberbush indicated on October 31, 2012, that Plaintiff stated his current medical condition was good and he had not had any significant psychological disturbances, Tr. 28, 586; Plaintiff continued to

---

[3]The ALJ's adverse credibility determination, as discussed above, is supported by clear and convincing reasons, and a physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of a claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see Morgan*, 169 F.3d at 602 (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted). Since Plaintiff was properly found by the ALJ to be not entirely credible, *see supra*, the ALJ appropriately discounted Dr. Genthe's report on the basis that it was largely based on Plaintiff's self-reported symptoms.

report satisfactory results from his medication in November 2012, and indicated he was "getting out more and feeling better," Tr. 28, 405; and progress reports from Ms. Ochiltre reflect that Plaintiff continued to function fairly well throughout 2013, Tr. 28- 29, 450-492.  The weight of the evidence of record demonstrates Plaintiff was not as psychologically limited as assessed by Dr. Genthe.

The ALJ also concluded the severe limitations assessed by Dr. Genthe on the medical source statement were inconsistent with Dr. Genthe's narrative findings. Tr. 29.  Dr. Genthe rated Plaintiff with severe limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; however, Dr. Genthe only noted mild to moderate limitations with Plaintiff's ability to follow simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, learn new tasks, and perform routine tasks without special supervision.  Tr. 29, 514.  Furthermore, upon examination, Dr. Genthe found Plaintiff was "organized in his thoughts," had "no difficulty maintaining a dialogue" or finding words, was "open, cooperative, friendly," and demonstrated self-awareness, normal insight and judgment, and a fair to good ability to make reasonable and responsible decisions. Tr. 24, 29, 508-509, 515.  The ALJ explained the foregoing findings by Dr. Genthe were inconsistent with his opinion that Plaintiff's ability to communicate and get along with others was poor.  *Id*.  Dr. Genthe's report is internally inconsistent.

The Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for according little weight to the opinions of Dr. Genthe.

3.    **Anna Ochiltre, MS, LMHCA**

Plaintiff next contends the ALJ erred by failing to accord greater weight to Ms. Ochiltre.  ECF No. 15 at 14-15.  While it is not clearly specified by Plaintiff, it appears Plaintiff asserts Ms. Ochiltre's testimony should have resulted in a more psychologically limited RFC determination by the ALJ.  ECF No. 15 at 14-15.

Ms. Ochiltre, a licensed mental health counselor associate, is not an acceptable medical source. *See* 20 C.F.R. § 404.1513(a) (acceptable medical sources include only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists). Therefore, Ms. Ochiltre's opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security Regulations. 20 C.F.R. §§ 404.1513, 416.913. Ms. Ochiltre is an "other source," and an ALJ may discount testimony from "other sources" if she "'gives reasons germane to each witness for doing so.'" *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

Ms. Ochiltre testified that the biggest employment barrier for Plaintiff would be his bipolar disorder which caused him to be immobilized. Tr. 58. However, she further testified she had not personally witnessed Plaintiff being immobilized; rather, Plaintiff had reported this effect of his disorder to her. Tr. 58. Ms. Ochiltre also mentioned Plaintiff's anxiety and limited ability to interact with others as potential barriers to employment. Tr. 59-60.

As determined by the ALJ, Tr. 30-31, the testimony of Ms. Ochiltre regarding the effects of a bipolar disorder was not persuasive given the evidence of record does not support a bipolar disorder diagnosis. *See supra* (Dr. Veraldi and Dr. Stupey opined that Plaintiff's symptoms did not meet the criteria for a bipolar disorder). Moreover, as stated by the ALJ, Tr. 30-31, Ms. Ochiltre's testimony regarding Plaintiff's mood swings was based on Plaintiff's non-credible self-reports. *See Morgan*, 169 F.3d at 602 (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted).

The Court finds the ALJ provided germane reasons for according "little weight" to the "other source" testimony of Ms. Ochiltre. Tr. 30-31.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision. *Fair*, 885 F.2d at 604. Based on the foregoing, the Court finds the ALJ did not err by according little weight to the April 10, 2014, Mental Medical Source Statement of Dr. Stupey, the substantial limitations assessed by Dr. Genthe in March 2014, and the testimony of Ms. Ochiltre.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED November 2, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE